0407008978/HC80376

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FRANCIS J. VALENTINE,

        *Plaintiff,*

   v.

FOUNDERS INSURANCE COMPANY, a
corporation, ARLIE G. CAVE, SIBYL
FORMYDUVAL and TIRZA FERNANDEZ,

        *Defendants.*

No.   08 CV 3302

Judge Zagel
Magistrate Judge Mason

### MOTION OF DEFENDANT FOUNDERS INSURANCE COMPANY
### FOR LEAVE TO FILE ITS ANSWER TO FIRST AMENDED COMPLAINT and ITS
### COUNTERCLAIM FOR DECLARATORY JUDGMENT, *INSTANTER*

———————————————

NOW COMES Defendant FOUNDERS INSURANCE COMPANY ("Founders"), by and through its attorneys, THE LAW OFFICE OF SHARI SHELMADINE, and, for its Motion for Leave to File its Answer to First Amended Complaint and its Counterclaim for Declaratory Judgment, *instanter*, states as follows:

1.      That Plaintiff, FRANCIS J. VALENTINE ("Valentine"), filed his initial Complaint against Founders, only, on June 9, 2008.

2.      That, on June 27, 2008, Founders filed its Motion to Dismiss Valentine's Complaint, pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure, on the bases that the "amount in controversy" did not meet the jurisdictional requirement, and that, due to the lack of complete diversity between the parties hereto, this Court lacked subject matter jurisdiction to hear this case.

1

3.     Founders presented its Motion to this Court on July 10, 2008, at which time Valentine was granted until July 24, 2008 to respond to Founders' Motion.  The Court advised that it would rule on Founders' Motion in due course, and set a status date of August 28, 2008.

4.     On July 16, 2008, Valentine filed his "Reply to Defendant's Motion to Dismiss."

5.     On July 21, 2008, Valentine filed his "First Amended Complaint – Conspiracy," wherein he added additional parties and altered his theory of the case.

6.     Founders did not respond to Valentine's First Amended Complaint because it was, respectfully, awaiting this Court's ruling on its Motion to Dismiss, to which Valentine responded.[1]

7.     Founders thereafter received Valentine's request that Founders be held in default for failing to answer his First Amended Complaint.

8.     Founders hereby requests leave of Court to file its Answer to First Amended Complaint and its Counterclaim for Declaratory Judgment, *instanter*, and prays that all defaults, technical or otherwise, be vacated, set aside and held for naught.

9.     Founders has attached a copy of its proposed Answer to First Amended Complaint and its Counterclaim for Declaratory Judgment hereto in support of the instant motion.

*WHEREFORE*, Defendant FOUNDERS INSURANCE COMPANY respectfully moves this Court for leave to file its Answer to First Amended Complaint and its Counterclaim for Declaratory Judgment, *instanter*, to vacate and all defaults, technical or otherwise, heretofore entered against FOUNDERS INSURANCE COMPANY, and for any such other and further relief as this Court deems just and proper in the circumstances.

---

[1] At the time of this writing, Founders has still not received this Honorable Court's ruling on its Motion to Dismiss.

Respectfully Submitted,

**THE LAW OFFICE OF SHARI SHELMADINE**

By:      /s/Shari Shelmadine

THE LAW OFFICE OF SHARI SHELMADINE
53 West Jackson Boulevard, Suite 1209
Chicago, Illinois 60604
(312) 447-0042
Attorney No. 42227
A.R.D.C. 6202507

0407008978/HC80376

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FRANCIS J. VALENTINE,

      *Plaintiff/Counter-Defendant,*

  v.

FOUNDERS INSURANCE COMPANY, a
corporation, ARLIE G. CAVE, SIBYL
FORMYDUVAL and TIRZA FERNANDEZ,

      *Defendants/Counter-Plaintiff.*

No.   08 CV 3302

Judge Zagel
Magistrate Judge Mason

## ANSWER OF DEFENDANT FOUNDERS INSURANCE COMPANY
## TO FIRST AMENDED COMPLAINT – CONSPIRACY

_____

NOW COMES Defendant/Counter-Plaintiff, FOUNDERS INSURANCE COMPANY
("Founders"), by and through its attorneys, THE LAW OFFICE OF SHARI SHELMADINE, and,
for its Answer to the First Amended Complaint filed by the Plaintiff/Counter-Defendant,
FRANCIS J. VALENTINE ("Valentine"), states as follows:

1.       Founders admits that it is incorporated in the State of Illinois, but further
affirmatively states that the Founders Policy at issue herein was written in the State of Indiana.
Founders admits that Arlie G. Cave, Sibyl Formyduval and Tirza Fernandez were and are
employees of Founders, and have been so employed at all relevant times herein.  Founders
denies the remaining allegations of Paragraph 1 as alleged.

2.       Founders objects to Paragraph 2 of Valentine's First Amended Complaint, as it
incorporates, by reference, Paragraphs 3, 4 and 5 of his original Complaint, which Complaint is

1

the subject of Founders' currently pending Motion to Dismiss.  Over said objection, and without waiving or compromising same, Founders admits that, on August 2, 2007, and at all times relevant herein, Valentine was the named insured on a policy of automobile insurance written and issued by Founders under Policy No. APIN227681 (the "Founders Policy"), with coverage as stated and set forth therein, subject to the terms, conditions and exclusions as so stated therein. As to Paragraph 4 of Valentine's original Complaint, Founders neither admits nor denies same for want of knowledge and, therefore, as to said allegations, demands that same be strictly proven. As to Paragraph 5 of Valentine's original Complaint, Founders neither admits nor denies same for want of knowledge and, therefore, as to said allegations, demands that same be strictly proven.

3.      Founders admits that Tirza Fernandez wrote letters to Valentine dated October 2, 2007 and October 5, 2007, but denies the remaining allegations of Paragraph 3 as alleged.

4.      Founders denies the allegations of Paragraph 4, and each of them, as alleged.

5.      Founders admits that Valentine wrote to Founders for the first time on January 31, 2008, three (3) days after he executed the "Florida Bodily Injury Release" on January 28, 2008, in favor of Robert Martino, pursuant to their settlement, but denies the remaining allegations of Paragraph 5 as alleged.

6.      Founders admits the allegations of Paragraph 6.

7.      Founders denies the allegations of Paragraph 7, and each of them, as alleged.

8.      Founders denies the allegations of Paragraph 8, and each of them, as alleged.

9.      Founders admits the allegations of Paragraph 9, with the caveats that this telephone conversation took place on June 27, 2008, not June 26, 2008, and that Sibyl Formyduval advised Valentine that Founders would not be honoring Valentine's request for underinsured motorist coverage as he had breached the terms and conditions precedent to coverage under the Founders Policy.

10.     Founders neither admits nor denies what "became obvious" to Valentine, for lack of personal knowledge as to same. As to the remaining allegations of Paragraph 10, Founders denies each and every allegation as alleged.

11.     Founders denies the allegations of Paragraph 11, and each of them, as alleged.

12.     Founders denies the allegations of Paragraph 12, and each of them, as alleged.

13.     Founders denies the allegations of Paragraph 13, and each of them, as alleged.

*WHEREFORE*, Defendant/Counter-Plaintiff FOUNDERS INSURANCE COMPANY respectfully prays that Judgment be entered in its favor and against the Plaintiff/Counter-Defendant, FRANCIS J. VALENTINE, and for any such other and further relief as this Honorable Court deems just and proper in the circumstances.

## FOUNDERS INSURANCE COMPANY'S COUNTERCLAIM FOR DECLARATORY JUDGMENT

_____

NOW COMES the Counter-Plaintiff, FOUNDERS INSURANCE COMPANY ("Founders"), by and through its attorneys, THE LAW OFFICE OF SHARI SHELMADINE, and, for its Counterclaim for Declaratory Judgment against the Counter-Defendant, FRANCIS J. VALENTINE ("Valentine"), pursuant to §34-14-1-1 of the Indiana Code of Civil Procedure, states as follows:

1.     That this is a contract action based upon a contract of automobile insurance written and underwritten in the State of Indiana.

2.     That, on September 14, 2007, and at all times relevant herein, Founders was an insurance company incorporated in the County of Cook, State of Illinois, and was duly licensed to

underwrite policies of automobile insurance, and to sell such policies and coverage, to members of the public in the State of, *inter alia*, Indiana.

3.      That, on September 14, 2007, and at all times relevant herein, Valentine was an Indiana resident who, upon information and belief, lived and resided at 2622 Hermoine Trail, Long Beach, Indiana 46360, and was the named insured on a policy of automobile insurance written and issued by Founders under Policy No. APIN227681 (the "Founders Policy"), with coverage as stated and set forth therein, subject to the terms, conditions and exclusions as so stated therein. A true and correct copy of the Founders Policy and corresponding Declarations Page are attached hereto.

4.      That, upon information and belief, on September 14, 2007, Valentine was involved in a motor vehicle occurrence with Robert Alan Martino in Winter Park, Florida.

5.      That, upon further information and belief, Robert Alan Martino was insured on September 14, 2007 with GMAC.

6.      That, on or before January 28, 2008, Valentine settled his bodily injury claim with GMAC for the sum of $10,000, and executed a "Florida Bodily Injury Release" on January 28, 2008, in favor of Robert Martino.

7.      That, on or about January 31, 2008, three (3) days after he executed the "Florida Bodily Injury Release" referenced herein at Paragraph 6, Valentine, for the first time, submitted his written claim to Founders for underinsured motorist coverage under the Founders Policy.

8.      That the Founders Policy provides, in relevant part, as follows:

**PART C (1) UNDERINSURED MOTORIST COVERAGE**

**ADDITIONAL DUTIES AFTER AN ACCIDENT OR LOSS**

A person seeking Underinsured Motorists Coverage must also:
1.  Promptly send us copies of the legal papers if a suit is brought;

2.  Promptly notify us *in writing* of a *tentative* settlement between the "insured" and the insurer of an "underinsured motor vehicle." Such notice must include certification of the liability coverage limits of the owner or operator of the "underinsured motor vehicle"; *and*

3.  Allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of the "underinsured motor vehicle." (Emphasis added)

9.      That Valentine breached the terms and conditions precedent to underinsured motorist coverage under the Founders Policy by failing to promptly notify Founders, in writing, of a tentative settlement between GMAC and himself "includ[ing] certification of the liability coverage limits of the owner or operator of the 'underinsured motor vehicle'," and by failing to allow Founders thirty (30) days to advance payment to Valentine in an amount equal to the tentative settlement to preserve Founders' rights against the insurer, owner or operator of the "underinsured motor vehicle," as specifically required by and under the Founders Policy.

10.     That Valentine did not notify Founders, in writing, of his "tentative" settlement with GMAC until after he actually settled with GMAC and executed the "Florida Bodily Injury Release" in favor of Robert Martino, GMAC's insured, referenced herein at Paragraph 6, as he was specifically required to do as a condition precedent to underinsured motorist coverage under the Founders Policy.

11.     That Valentine did not allow Founders thirty (30) days to advance payment to Valentine in an amount equal to the "tentative" settlement between GMAC and Valentine so as to preserve Founders' rights against the insurer, owner or operator of the "underinsured motor vehicle," as he was specifically required to do as a condition precedent to underinsured motorist coverage under the Founders Policy.

12.    That, because Valentine breached the Founders Policy, and the terms and conditions precedent to underinsured motorist coverage thereunder, Founders has and owes no duty to provide underinsured motorist coverage, arbitration or benefits to, for or on behalf of Valentine for or in connection with the motor vehicle occurrence of September 14, 2007 described herein.

13.    That, because Valentine breached the Founders Policy, and the terms and conditions precedent to underinsured motorist coverage thereunder, Valentine is entitled to recover no underinsured motorist coverage, arbitration or benefits whatsoever under the Founders Policy for or in connection with the motor vehicle occurrence of September 14, 2007 described herein.

14.    That an actual controversy exists between Founders and Valentine hereto, and, by the terms and provisions of §34-14-1-1 of the Indiana Code of Civil Procedure, this Honorable Court is vested with the power to declare and adjudicate the rights and liabilities of the parties hereto, and to give such other and further relief as it deems necessary under the facts and circumstances herein.

WHEREFORE, the Counter-Plaintiff, FOUNDERS INSURANCE COMPANY ("Founders"), prays that a Declaratory Judgment be entered in its favor and against the Counter-Defendant, FRANCIS J. VALENTINE ("Valentine"), pursuant to §34-14-1-1 of the Indiana Code of Civil Procedure, and prays that this Court will make the following findings as a matter of law:

    1.    That, because FRANCIS J. VALENTINE breached the Founders Policy, and the terms and conditions precedent to underinsured motorist coverage thereunder, FOUNDERS INSURANCE COMPANY has and owes no duty to provide underinsured motorist coverage, arbitration or benefits to, for or

on behalf of FRANCIS J. VALENTINE for or in connection with the motor vehicle occurrence of September 14, 2007 described herein;

2.    That, accordingly, FRANCIS J. VALENTINE is entitled to recover no underinsured motorist coverage, arbitration or benefits whatsoever under the Founders Policy for or in connection with the motor vehicle occurrence of September 14, 2007 described herein; and

3.    For any such other and further relief as this Court deems just and proper in the circumstances.


Respectfully Submitted,

**THE LAW OFFICE OF SHARI SHELMADINE**

By:      /s/ Shari Shelmadine


THE LAW OFFICE OF SHARI SHELMADINE
53 West Jackson Boulevard, Suite 1209
Chicago, Illinois 60604
(312) 447-0042
Attorney No. 42227
A.R.D.C. 6202507


# AFFIDAVIT OF INSUFFICIENT KNOWLEDGE

I, Shari Shelmadine, being first duly sworn on my oath, depose and state that where I have answered in the foregoing Answer to First Amended Complaint filed herein that I lack sufficient knowledge upon which to form a belief as to the truth or falsity of an allegation pleaded by the Plaintiff in his First Amended Complaint, I verily believe said statements to be true and accurate to the best of my knowledge, information and belief.


_____
            /s/ Shari Shelmadine

# FOUNDERS INSURANCE COMPANY ℠
### A MULTIPLE LINE STOCK COMPANY
1645 EAST BIRCHWOOD AVENUE DES PLAINES, IL  60018
(847) 768-0040 / Fax (847) 795-0080

PART B DECLARATION PAGE

Private Passenger Automobile

Renewal Ext Dec
EFFECTIVE  8/02/07

DIRECT BILL

| POLICY NUMBER | FROM POLICY PERIOD TO | | | |
|---|---|---|---|---|
| APIN227681 | 8/02/07 | 8/02/08 | 12:01 AM STANDARD TIME | 2354 |

| NAMED INSURED AND ADDRESS | PRODUCER |
|---|---|
| FRANCIS VALENTINE<br>2622 HERMOINE TRAIL<br>MICHIGAN CITY    IN 46360 | CROWEL INSURANCE AGENCY<br>170 DUNES PLAZA<br>MICHIGAN CITY    IN 46360<br><br>(219) 874-3800 |

| BASIC PREMIUM | ENDORSEMENTS PREMIUM | SERVICE CHARGE | TOTAL PREMIUM | ADDITIONAL/RETURN PREMIUM |
|---|---|---|---|---|
| $799.00 | | | $799.00 | |

VEHICLES COVERED

| VEH | YR | MAKE | MODEL | IDENTIFICATION | VALUE | SYM | ST | TER | USE | CLASS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 97 | FORD | THUNDERBIR | 1FALP62W5VH120579 | | 11 | IN | 36 | | SM79 |

INSURANCE IS PROVIDED WHERE A PREMIUM IS SHOWN FOR THE COVERAGE

| COVERAGES | LIMITS OF LIABILITY | | COVERAGE PREMIUMS |
|---|---|---|---|
| | EACH PER | EACH OCC | VEH 1 |
| Bodily Injury | $25,000 | $50,000 | $121.00 |
| Property Damage | | $25,000 | $217.00 |
| Uninsured Motorist-BI | $25,000 | $50,000 | $32.00 |
| Underinsured Motorist-BI | $50,000 | $50,000 | $20.00 |
| Uninsured Motorist-PD   VEH 1 | | | |
|    LIMITS EACH ACCID -  $10,000 | | | |
|    DEDUCTIBLES -      NONE | | | $40.00 |
| Collision            VEH 1 | | | |
|    LIMITS EACH ACCID - ACTUAL CASH VALUE | | | |
|    DEDUCTIBLES -      $500 | | | $299.00 |
| Comprehensive        VEH 1 | | | |
|    LIMITS EACH ACCID - ACTUAL CASH VALUE | | | |
|    DEDUCTIBLES -      $500 | | | $70.00 |
| TOTAL PREMIUM PER VEHICLE | | | $799.00 |

TWO OR MORE AUTOMOBILES INSURED: THE TOTAL LIMIT OF THE COMPANY'S LIABILITY
UNDER ALL POLICIES ISSUED BY THE COMPANY TO THE INSURED OR WHICH PROVIDE
COVERAGE TO OR FOR THE INSURED SHALL NOT EXCEED THE HIGHEST LIMIT INDICATED
FOR ANY ONE VEHICLE UNDER ANY ONE POLICY.

DRIVER INFORMATION

| DR | VEH | SEX | MAR | BIRTH | PRIN | DVR LIC NO. | NAME | FR |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | M | S | 10/29/27 | P | 0900481251 | FRANCIS VALENTINE | N |

ENDORSEMENTS ATTACHED

| ENDORSEMENT | EDITION | | ITEM | PREMIUM |
|---|---|---|---|---|
| IN-POL | 01-01 | Policy Jacket - Indiana | ALL | INCLUDED |

# FOUNDERS INSURANCE COMPANY ℠

A MULTIPLE LINE STOCK COMPANY

1645 EAST BIRCHWOOD AVENUE  DES PLAINES, IL  60018

(847) 768-0040 / Fax (847) 795-0080

PART B DECLARATION PAGE

Private Passenger Automobile

Renewal Ext Dec
EFFECTIVE  8/02/07

DIRECT BILL

| POLICY NUMBER | FROM | POLICY PERIOD TO | | |
|---|---|---|---|---|
| APIN227681 | 8/02/07 | 8/02/08 | 12:01 AM STANDARD TIME | 2354 |

| NAMED INSURED AND ADDRESS | PRODUCER |
|---|---|
| FRANCIS VALENTINE<br>2622 HERMOINE TRAIL<br>MICHIGAN CITY    IN 46360 | CROWEL INSURANCE AGENCY<br>170 DUNES PLAZA<br>MICHIGAN CITY    IN 46360<br><br>(219) 874-3800 |

DISCOUNTS/SURCHARGES ATTACHED
    DISCOUNT/SURCHARGE    Veh 1
    Loss Free Renewal    - 20%



# FOUNDERS®
**A pillar of strength. Since 1901.**

## FOUNDERS INSURANCE COMPANY℠

**DES PLAINES, ILLINOIS
(A STOCK COMPANY)**

# INDIANA AUTOMOBILE POLICY

THIS POLICY JACKET WITH THE
PERSONAL AUTO POLICY FORM,
DECLARATIONS PAGE AND
ENDORSEMENTS, IF ANY, ISSUED
TO FORM A PART THEREOF,
COMPLETES THIS POLICY.

IN-POL (01/01)

**YOUR PERSONAL AUTO POLICY-QUICK REFERENCE**

DECLARATIONS PAGE

Your Name and Address
Your Auto or Trailer
Policy Period
Coverage and Amounts of Insurance

|                                                          | PAGE |
|----------------------------------------------------------|------|
| **AGREEMENT**                                            | 3    |
| **DEFINITIONS**                                          | 3    |
| **PART A— LIABILITY COVERAGE**                           | 5    |
| Insuring Agreement                                       | 5    |
| Supplementary Payments                                   | 5    |
| Exclusions                                               | 6    |
| Limit of Liability                                       | 7    |
| Out of State Coverage                                    | 8    |
| Financial Responsibility                                 | 8    |
| Other Insurance                                          | 8    |
| **PART B— MEDICAL PAYMENTS COVERAGE**                    | 10   |
| Insuring Agreement                                       | 10   |
| Exclusions                                               | 10   |
| Limit of Liability                                       | 11   |
| Other Insurance                                          | 11   |
| **PART C— UNINSURED MOTORISTS COVERAGE**                 | 12   |
| Insuring Agreement                                       | 12   |
| Exclusions                                               | 13   |
| Limit of Liability                                       | 14   |
| Other Insurance                                          | 14   |
| Arbitration                                              | 15   |
| **PART C(1) UNDERINSURED MOTORISTS COVERAGE**            | 16   |
| Insuring Agreement                                       | 16   |
| Exclusions                                               | 17   |
| Limit of Liability                                       | 17   |
| Other Insurance                                          | 18   |
| Arbitration                                              | 18   |
| Additional Duties After an Accident of Loss              | 19   |

**PART D— COVERAGE FOR DAMAGE
TO YOUR AUTO**.............................................................20

Insuring Agreement.......................................................20
Transportation Expenses................................................20
Exclusions...................................................................21
Limit of Liability...........................................................23
Payment of Loss...........................................................24
No Benefit to Bailee .....................................................24
Other Sources of Recovery............................................24
Appraisal ....................................................................24

**PART E— DUTIES AFTER AN
ACCIDENT OR LOSS** ...................................................26

**PART F— GENERAL PROVISIONS** .............................27

Bankruptcy..................................................................27
Changes .....................................................................27
Fraud..........................................................................27
Legal Action Against Us.................................................27
Our Right to Recover Payment .......................................28
Policy Period and Territory .............................................29
Termination .................................................................29
Transfer of Your Interest in This Policy ............................30
Two or More Auto Policies..............................................31
Notice.........................................................................31

**NOTICE TO POLICYHOLDERS**.....................................32

## PERSONAL AUTO POLICY AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:
  **1.** The "named insured" shown in the Declarations; and
  **2.** The spouse if a resident of the same household.
**B.** "We", "us" and "our" refer to the Company providing this insurance.
**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:
  **1.** Under a written agreement to that person; and
  **2.** For a continuous period of at least 6 months.
Other words and phrases are defined. They are in quotation marks when used.
**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.
**E.** "Business" includes trade, profession or occupation.
**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.
**G.** "Occupying" means in, upon, getting in, on, out or off.
**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.
**I.** "Trailer" means a vehicle designed to be pulled by a:
  **1.** Private passenger auto; or
  **2.** Pickup or van.
  It also means a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above.
**J.** "Your covered auto" means:
  **1.** Any vehicle shown in the Declarations.
  **2.** Any of the following types of vehicles on the date you become the owner:
  **a.** A private passenger auto; or
  **b.** A pickup or van that:
  **(1)** Has a Gross Vehicle Weight of less than 10,000 lbs.; and
  **(2)** Is not used for the delivery or transportation of goods and materials unless such use is:
  **(a)** Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or
  **(b)** For farming or ranching.
This provision (**J.2.**) applies only if:
  **a.** You acquire the vehicle during the policy period;
  **b.** You ask us to insure it within 30 days after you become the owner; and

**c.** With respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage For Damage To Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

**3.** Any "trailer" you own.

**4.** Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    **a.** Breakdown;        **d.** Loss; or

    **b.** Repair;           **e.** Destruction.

    **c.** Servicing;

This provision (**J.4.**) does not apply to Coverage For Damage To Your Auto.

## PART A—LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property dam-age" for which any "insured" becomes legally responsi-ble because of an auto accident. Damages include pre-judgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured' as used in this Part means:

  **1.** You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

  **2.** Any person using "your covered auto".

  **3.** For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

  **4.** For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (**B.4.**) applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

**1.** Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property dam-age" covered under this policy.

**2.** Premiums on appeal bonds and bonds to release attach-ments in any suit we defend.

**3.** Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

**4.** Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

**5.** Other reasonable expenses incurred at our request.

## EXCLUSIONS

**A.** We do not provide Liability Coverage for any "insured" :

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:
   **a.** Rented to;
   **b.** Used by; or
   **c.** In the care of;
   that "insured".

This exclusion (**A.3.**) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This exclusion (**A.4.**) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (**A.5.**) does not apply to a share-the expense car pool.

6. While employed or otherwise engaged in the "business" of:

   | | |
   |---|---|
   | **a.** Selling; | **d.** Storing; or |
   | **b.** Repairing; | **e.** Parking. |
   | **c.** Servicing; | |

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (**A.6.**) does not apply to the ownership, maintenance or use of "your covered auto" by:
   **a.** You;
   **b.** Any "family member"; or
   **c.** Any partner, agent or employee of you or any "family member";

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in exclusion **A.6.** This exclusion (**A.7.**) does not apply to the maintenance or use of a:
   **a.** Private passenger auto;
   **b.** Pickup or van that:
      **(1)** You own; or
      **(2)** You do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   | | |
   |---|---|
   | **(a)** Breakdown; | **(d)** Loss; or |
   | **(b)** Repair; | **(e)** Destruction; |
   | **(c)** Servicing; | or |

   **c.** "Trailer" used with a vehicle described in **a.** or **b.** above.

**8.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

**9.** For "bodily injury" or "property damage" for which that "insured":

   **a.** Is an insured under a nuclear energy liability policy; or

   **b.** Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

   **a.** American Nuclear Insurers;

   **b.** Mutual Atomic Energy Liability Underwriters; or

   **c.** Nuclear Insurance Association of Canada.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

   **1.** Any vehicle which:

   **a.** Has fewer than four wheels; or

   **b.** Is designed mainly for use off public roads.

   This exclusion (**B.1.**) does not apply:

   **a.** While such vehicle is being used by an "insured" in a medical emergency; or

   **b.** To any "trailer".

   **2.** Any vehicle, other than "your covered auto", which is:

   **a.** Owned by you; or

   **b.** Furnished or available for your regular use.

   **3.** Any vehicle, other than "your covered auto", which is:

   **a.** Owned by any "family member"; or

   **b.** Furnished or available for the regular use of any "family member".

   However, this exclusion (**B.3.**) does not apply to you while you are maintaining or "occupying" any vehicle which is:

   **a.** Owned by a "family member"; or

   **b.** Furnished or available for the regular use of a "family member".

   **4.** Any vehicle, located inside a facility designed for racing, for the purpose of:

   **a.** Competing in; or

   **b.** Practicing or preparing for;

   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily

**7**

Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (**B.**) will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
1. Part B or Part C of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:
1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

A. If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for a vehicle you do not

own shall be excess over any other collectible insurance, except in the following situations:

We will provide primary insurance for a vehicle you do not own:

1. If the vehicle is insured under a policy affording coverage to a named insured engaged in the "business" of:

<table>
<tr><td>a. Selling;</td><td>f. Testing;</td></tr>
<tr><td>b. Leasing;</td><td>g. Road Testing;</td></tr>
<tr><td>c. Repairing;</td><td>h. Parking; or</td></tr>
<tr><td>d. Servicing;</td><td>I. Storing;</td></tr>
<tr><td>e. Delivering;</td><td></td></tr>
</table>

motor vehicles. This applies only if you or any "family member":

  a. Are operating the vehicle; and

  b. Are neither the person engaged in such "business' nor that person's employee or agent.

2. If the vehicle is leased by you under a written lease agreement and you have agreed to provide coverage for your operation of the vehicle.

B. Any insurance we provide for a vehicle you own shall be excess to that of a person engaged in the "business of:

  1. Storing;   3. Servicing; or

  2. Parking;   4. Repairing;

motor vehicles if the accident occurs while the vehicle is under that person's control or the control of that person's employee or agent.

9

## PART B—MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":
  **1.** Caused by accident; and
  **2.** Sustained by an "insured".
We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.
**B.** "Insured" as used in this Part means:
  **1.** You or any "family member":
    **a.** While "occupying"; or
    **b.** As a pedestrian when struck by;
      a motor vehicle designed for use mainly on public roads or a "trailer" of any type.
  **2.** Any other person while "occupying" "your covered auto".

### EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":
**1.** Sustained while "occupying" any motorized vehicle having fewer than four wheels.
**2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (**2.**) does not apply to a share the-expense car pool.
**3.** Sustained while "occupying" any vehicle located for use as a residence or premises.
**4.** Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".
**5.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:
  **a.** Owned by you; or
  **b.** Furnished or available for your regular use.
**6.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:
  **a.** Owned by any "family member"; or
  **b.** Furnished or available for the regular use of any "family member".
However, this exclusion (**6.**) does not apply to you.
**7.** Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so.
**8.** Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This exclusion (**8.**) does not apply to "bodily injury" sustained while "occupying" a:
  **a.** Private passenger auto;
  **b.** Pickup or van that you own; or
  **c.** "Trailer" used with a vehicle described in **a.** or **b.** above.

**9.** Caused by or as a consequence of:
   **a.** Discharge of a nuclear weapon (even if accidental);
   **b.** War (declared or undeclared);
   **c.** Civil war;
   **d.** Insurrection; or
   **e.** Rebellion or revolution.
**10.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:
   **a.** Nuclear reaction;
   **b.** Radiation; or
   **c.** Radioactive contamination.
**11.** Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:
   **a.** Competing in; or
   **b.** Practicing or preparing for;
   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:
   **1.** "Insureds";
   **2.** Claims made;
   **3.** Vehicles or premiums shown in the Declarations; or
   **4.** Vehicles involved in the accident.
**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
   **1.** Part A or Part C of this policy; or
   **2.** Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C—UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

1. "Bodily injury" sustained by an "insured" and caused by an accident; and

2. "Property damage" caused by an accident if the Schedule or Declarations indicates that both bodily injury and property damage Uninsured Motorists Coverage applies. However, when both bodily injury and property damage Uninsured Motorists Coverage is afforded, item **3.** of the definition of "uninsured motor vehicle," concerning an unidentified hit-and-run vehicle, will not apply to "property damage."

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle." Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

1. You or any "family member";

2. Any other person "occupying" "your covered auto";

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Property damage" as used in this endorsement means injury to or destruction of:

1. "Your covered auto."

2. Any property owned by a person listed in **1.** or **2.** of "insured" while contained in "your covered auto."

However, "property damage" shall not include loss of use of damaged or destroyed property.

**D.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident. In this case its limit for liability must be less than the minimum limit for liability specified by the financial responsibility law of Indiana.

3. Which, with respect to damages for "bodily injury" only, is a hit-and-run vehicle whose owner or operator cannot be identified and which hits:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto."

12

**4.** To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

    **a.** Denies coverage; or

    **b.** Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

**1.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self insurer which is or becomes insolvent.

**2.** Owned by any governmental unit or agency while being used in an authorized manner.

**3.** Owned by or furnished or available for the regular use of you or any "family member."

**4.** Operated on rails or crawler treads.

**5.** Designed mainly for use off public roads while not on public roads.

**6.** While located for use as a residence or premises.

## EXCLUSIONS

**A.** We do not provide coverage under this endorsement for "property damage" or "bodily injury" sustained by any "insured":

**1.** While "occupying" or when struck by, any motor vehicle owned by you which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

**2.** If that "insured" or the legal representative settles the "bodily injury" or "property damage" claim without our consent.

**3.** When "your covered auto" is being used as a public or livery conveyance. This exclusion (**A.3.**) does not apply to a share-the-expense car pool.

**4.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

**5.** For the first $300 of the amount of "property damage" to the property of each "insured ' as the result of any one accident with an "uninsured motor vehicle" if the Schedule or Declarations indicates that the deductible applies to this coverage. This exclusion (**A.5.**) does not apply if "your covered auto" is legally parked and unoccupied when involved in an accident with an "uninsured motor vehicle."

**B.** This coverage shall not apply directly or indirectly to benefit:

**1.** Any insurer or self-insurer under any of the following or similar law:

    **a.** Workers compensation law; or

    **b.** Disability benefits law.

**2.** Any insurer of property.

**C.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

    **a.** Denies coverage; or

    **b.** Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self insurer which is or becomes insolvent.

2. Owned by any governmental unit or agency while being used in an authorized manner.

3. Owned by or furnished or available for the regular use of you or any "family member."

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

**A.** We do not provide coverage under this endorsement for "property damage" or "bodily injury" sustained by any "insured":

1. While "occupying" or when struck by, any motor vehicle owned by you which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that "insured" or the legal representative settles the "bodily injury" or "property damage" claim without our consent.

3. When "your covered auto" is being used as a public or livery conveyance. This exclusion (**A.3.**) does not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

5. For the first $300 of the amount of "property damage" to the property of each "insured ' as the result of any one accident with an "uninsured motor vehicle" if the Schedule or Declarations indicates that the deductible applies to this coverage. This exclusion (**A.5.**) does not apply if "your covered auto" is legally parked and unoccupied when involved in an accident with an "uninsured motor vehicle."

**B.** This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:

    **a.** Workers compensation law; or

    **b.** Disability benefits law.

2. Any insurer of property.

**C.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A.** The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. The limit of Property Damage Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident.

This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

**B.** The limit of liability shall be reduced by all sums paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and;
1. Part A or Part B of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

**D.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**E.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

**F.** No payment will be made for loss paid or payable to the "insured" under Part D of the policy.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:
1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insur-

14

ance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

   1. Whether that "insured" is legally entitled to recover damages; or

   2. As to the amount of damages which are recoverable by that "insured";

   From the owner or operator of an "uninsured motor vehicle" then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

   Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

   1. Pay the expenses it incurs; and

   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

   1. Whether the "insured" is legally entitled to recover damages; and

   2. The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**PART C(1) UNDERINSURED MOTORISTS COVERAGE**

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

  **1.** Sustained by an "insured"; and

  **2.** Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle." We will pay damages under this coverage caused by an accident with an "underinsured motor vehicle" only if **1.** or **2.** below applies:

  **1.** The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payments of judgments or settlements; or

  **2.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

    **a.** Have been given prompt written notice of both the tentative settlement and certification of the liability coverage limits of the owner or operator of the "underinsured motor vehicle"; and

    **b.** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**B.** "Insured" as used in this endorsement means:

  **1.** You or any "family member";

  **2.** Any other person "occupying" "your covered auto";

  **3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is either:

  **1.** Less than the limit of liability for this coverage; or

  **2.** Reduced by payments to persons, other than "insureds," injured in the accident to less than the limit of liability for this coverage.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

  **1.** To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of Indiana.

  **2.** Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Owned by any governmental unit or agency.
4. Owned by or furnished or available for the regular use of you or any "family member."
5. Operated on rails or crawler treads.
6. Designed mainly for use off public roads while not on public roads.
7. While located for use as a residence or premises.
8. To which a bodily injury liability bond applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes insolvent.

## EXCLUSIONS

A. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":
   1. While "occupying" or when struck by, any motor vehicle owned by you which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
   2. When "your covered auto" is being used as a public or livery conveyance. This exclusion (**A.2.**) does not apply to a share-the-expense car pool.
   3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.
B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
   1. Workers' compensation law; or
   2. Disability benefits law.
C. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Schedule or in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
   1. " Insureds";
   2. Claims made;
   3. "Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the accident.
B. The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.
C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

**D.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**E.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law

   **1.** Workers' compensation law; or

   **2.** Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

**1.** Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

**2.** Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

**3.** If the coverage under this policy is provided:

   **a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   **b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

**A.** If we and an "insured" do not agree:

   **1.** Whether that "insured" is legally entitled to recover damages; or

   **2.** As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "underinsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

   **1.** Pay the expenses it incurs; and

**2.** Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

    **1.** Whether the "insured" is legally entitled to recover damages; and

    **2.** The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**ADDITIONAL DUTIES AFTER AN ACCIDENT OR LOSS**

A person seeking Underinsured Motorists Coverage must also:

1. Promptly send us copies of the legal papers if a suit is brought;

2. Promptly notify us in writing of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle." Such notice must include certification of the liability coverage limits of the owner or operator of the "underinsured motor vehicle"; and

3. Allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of the "underinsured motor vehicle."

## PART D—COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

    **1.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

    **2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object. Loss caused by the following is considered other than "collision":

    **1.** Missiles or falling objects;

    **2.** Fire;

    **3.** Theft or larceny;

    **4.** Explosion or earthquake;

    **5.** Windstorm;

    **6.** Hail, water or flood;

    **7.** Malicious mischief or vandalism;

    **8.** Riot or civil commotion;

    **9.** Contact with bird or animal; or

    **10.** Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

**C.** "Non-owned auto" means:

    **1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

    **2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

        **a.** Breakdown;

        **b.** Repair;

        **c.** Servicing;

        **d.** Loss; or

        **e.** Destruction.

### TRANSPORTATION EXPENSES

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

    **1.** Temporary transportation expenses incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

        **a.** Other than "collision" only if the Declarations

   indicate that Other Than Collision Coverage is
   provided for that auto.
  **b.** "Collision" only if the Declarations indicate that
   Collision Coverage is provided for that auto.
 **2.** Loss of use expenses for which you become legally
  responsible in the event of loss to a "non-owned auto".
  We will pay for loss of use expenses if the loss is caused
  by:
  **a.** Other than "collision" only if the Declarations indicate
   that Other Than Collision Coverage is provided for any
   "your covered auto".
  **b.** "Collision" only if the Declarations indicate that
   Collision Coverage is provided for any "your
   covered auto".

If the loss is caused by a total theft of "your covered auto"
or a "non-owned auto", we will pay only expenses
incurred during the period:
 **1.** Beginning 48 hours after the theft; and
 **2.** Ending when "your covered auto" or the "nonowned
  auto" is returned to use or we pay for its loss .

If the loss is caused by other than theft of a "your covered
auto" or a "non-owned auto", we will pay only expenses
beginning when the auto is withdrawn from use for more
than 24 hours. Our payment will be limited to that period
of time reasonably required to repair or replace the "your
covered auto" or the "non-owned auto".

**EXCLUSIONS**

We will not pay for:
**1.** Loss to "your covered auto" or any "non-owned auto"
 which occurs while it is being used as a public or livery
 conveyance. This exclusion (**1.**) does not apply to a
 share-the-expense car pool.
**2.** Damage due and confined to:
 **a.** Wear and tear;
 **b.** Freezing;
 **c.** Mechanical or electrical breakdown or failure; or
 **d.** Road damage to tires.
 This exclusion (**2.**) does not apply if the damage results
 from the total theft of "your covered auto" or any "non-
 owned auto".
**3.** Loss due to or as a consequence of:
 **a.** Radioactive contamination;
 **b.** Discharge of any nuclear weapon (even if accidental);
 **c.** War (declared or undeclared);
 **d.** Civil war;
 **e.** Insurrection; or
 **f.** Rebellion or revolution.
**4.** Loss to:
 **a.** Any electronic equipment designed for the
  reproduction of sound, including, but not limited to:
  **(1)** Radios and stereos;

      **(2)** Tape decks; or

      **(3)** Compact disc players;

  **b.** Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

      **(1)** Citizens band radios;

      **(2)** Telephones;

      **(3)** Two-way mobile radios;

      **(4)** Scanning monitor receivers;

      **(5)** Television monitor receivers;

      **(6)** Video cassette recorders;

      **(7)** Audio cassette recorders; or

      **(8)** Personal computers;

  **c.** Tapes, records, discs, or other media used with equipment described in **a.** or **b.**; or

  **d.** Any other accessories used with equipment described in **a.** or **b.**

This exclusion (**4.**) does not apply to:

  **a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

      **(1)** The equipment is permanently installed in "your covered auto" or any "non-owned auto"; or

      **(2)** The equipment is:

         **(a)** Removable from a housing unit which is permanently installed in the auto;

         **(b)** Designed to be solely operated by use of the power from the auto's electrical system; and

         **(c)** In or upon "your covered auto" or any "non-owned auto";

      at the time of the loss.

  **b.** Any other electronic equipment that is:

      **(1)** Necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

      **(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

**5.** A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities. This exclusion (**5.**) does not apply to the interests of Loss Payees in "your covered auto".

**6.** Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (**6.**) does not apply to a camper body or "trailer" you:

  **a.** Acquire during the policy period; and

  **b.** Ask us to insure within 30 days after you become the owner.

**7.** Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**8.** Loss to:
    **a.** Awnings or cabanas; or
    **b.** Equipment designed to create additional living facilities.

**9.** Loss to equipment designed or used for the detection or location of radar or laser.

**10.** Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:
    **a.** Special carpeting and insulation, furniture or bars;
    **b.** Facilities for cooking and sleeping;
    **c.** Height-extending roofs; or
    **d.** Custom murals, paintings or other decals or graphics.

**11.** Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:
    **a.** Selling;    **d.** Storing; or
    **b.** Repairing;    **e.** Parking;
    **c.** Servicing;
vehicles designed for use on public highways. This includes road testing and delivery.

**12.** Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion **11.** This exclusion (**12.**) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer".

**13.** Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:
    **a.** Competing in; or
    **b.** Practicing or preparing for;
any prearranged or organized racing or speed contest.

**14.** Loss to, or loss of use of, a "non-owned auto" rented by:
    **a.** You; or
    **b.** Any "family member";
if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

**A.** Our limit of liability for loss will be the lesser of the:
    **1.** Actual cash value of the stolen or damaged property; or
    **2.** Amount necessary to repair or replace the property with other property of like kind and quality.
However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the

event of a total loss.

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, re turn any stolen property to:

**1.** You; or

**2.** The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide:

**1.** For "your covered auto" shall be excess to that of a person engaged in the "business" of:

    **a.** Storing;    **c.** Servicing; or

    **b.** Parking;    **d.** Repairing;

motor vehicles, if the loss occurs while "your covered auto" is under that person's control or the control of that person's employee or agent.

**2.** With respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

    **a.** Any coverage provided by the owner of the "non owned auto";

    **b.** Any other applicable physical damage insurance;

    **c.** Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the

24

umpire. A decision agreed to by any two will be binding.
Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire
   equally.

**B.** We do not waive any of our rights under this policy by
agreeing to an appraisal.

## PART E—DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

**1.** Cooperate with us in the investigation, settlement or defense of any claim or suit.

**2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

**3.** Submit, as often as we reasonably require:

**a.** To physical exams by physicians we select. We will pay for these exams.

**b.** To examination under oath and subscribe the same.

**4.** Authorize us to obtain:

**a.** Medical reports; and

**b.** Other pertinent records.

**5.** Submit a proof of loss when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

**1.** Promptly notify the police if a hit-and-run driver is involved.

**2.** Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage For Damage To Your Auto must also:

**1.** Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

**2.** Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

**3.** Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F—GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

**1.** The number, type or use classification of insured vehicles;

**2.** Operators using insured vehicles;

**3.** The place of principle garaging of insured vehicles;

**4.** coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (**C.**) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of your policy; or

**2.** An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

**1.** We agree in writing that the "insured" has an obligation to pay; or

**2.** The amount of that obligation has been finally

27

determined by judgment after trial.

**B.** No person or organization has any right under this poli-
cy to bring us into any action to determine the liability of
an "insured".

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person
to or for whom payment was made has a right to recov-
er damages from another we shall be subrogated to that
right. That person shall do:

1. Whatever is necessary to enable us to exercise
our rights; and
2. Nothing after loss to prejudice them.

We shall be subrogated to that right with respect to:

1. Coverage other than Uninsured Motorists Coverage
or Underinsured Motorists Coverage, even if the
person has not been fully compensated for damages.
2. Uninsured Motorists Coverage or Underinsured
Motorists Coverage only after the person has been
fully compensated for damages.

However, our rights in this paragraph (**A.**) do not apply
with respect to:

1. Damages the person is legally entitled to recover from
the owner or operator of an "underinsured motor
vehicle" if we:
   **a.** Have been given prompt written notice of both a
   tentative settlement, between an "insured" and the
   insurer of an "underinsured motor vehicle," and
   certification of the liability coverage limits of the
   owner or operator of an "underinsured motor
   vehicle"; and
   **b.** Fail to advance payment to the "insured" in an
   amount equal to the tentative settlement within 30
   days after receipt of notification.

If we advance payment to the "insured" in an amount
equal to the tentative settlement within 30 days after
receipt of notification:

   **a.** That payment will be separate from any amount the
   "insured" is entitled to recover under the provisions
   of Underinsured Motorists Coverage.
   **b.** We also have a right to recover the advanced
   payment.
2. Part D, against any person using "your covered auto"
with a reasonable belief that that person is entitled to
do so.

**B.** If we make a payment under this policy and the person
to or for whom payment is made recovers damages from
another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment.

This paragraph (**B.**) applies with respect to:

1. Coverage other than Uninsured Motorists Coverage

or Underinsured Motorists Coverage, even if the person to or for whom payment is made has not been fully compensated for damages.

2. Uninsured Motorists Coverage or Underinsured Motorists Coverage, only after the person has been fully compensated.

C. If we make a payment under this policy because the insurer of the "uninsured motor vehicle" or "underinsured motor vehicle" is or becomes insolvent, our rights under paragraph **A.** or **B.** with respect to Uninsured Motorists Coverage or Underinsured Motorists Coverage:

1. Apply against the insured of the insolvent insurer only for amounts paid by us in excess of the limits of liability of the insolvent insurer's policy.

2. Do not apply against the Indiana Guaranty Association.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. Returning this policy to us; or

b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. At least 10 days notice:

(1) If cancellation is for nonpayment of premium; or

(2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

**a.** For nonpayment of premium; or

**b.** If your driver's license or that of:

   **(1)** Any driver who lives with you; or

   **(2)** Any driver who customarily uses "your covered auto";

has been suspended or revoked. This must have occurred:

   **(1)** During the policy period; or

   **(2)** Since the last anniversary of the original effective date if the policy period is other than 1 year; or

**c.** For fraud, willful misrepresentation or concealment on the part of any insured in respect to a material fact or circumstance relating to the issuance or continuation of this policy

**B. Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is :

**1.** Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

**2.** 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C. Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

**1.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**2.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

   **1.** The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

   **2.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## NOTICE

Your notice to our authorized agent shall be deemed to be notice to us.

## NOTICE TO POLICYHOLDERS
## INFORMATION CONCERNING QUESTIONS,
## PROBLEMS AND CLAIMS

We are here to serve you.

As our policyholder, your satisfaction is very important to us. If you have a question about your policy, if you need assistance with a problem, or if you have a claim, you should first contact your insurance agent, or us by telephone at: <u>1-888-676-4342</u> or <u>847-768-0040</u>. Should you have a valid claim, we fully expect to provide a fair settlement in a timely fashion.

Should you feel you are not being treated fairly with respect to a claim, you may contact the Indiana Department of Insurance with your complaint.

To contact the Department, write or call:

Consumer Services Division
Indiana Department of Insurance
311 West Washington Street, Suite 300
Indianapolis, IN 46204-2787
317-232-2395 or 1-800-622-4461

**In Witness Whereof,** Founders Insurance Company has caused this policy to be signed by its Secretary and President at Des Plaines, Illinois

Secretary                    President

*James K. Audgoni*         *Jane M. Abed*